IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID J. LOOMIS,

        Petitioner,

        v.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,

        Respondent.

CASE NO. 2:20-CV-3181
JUDGE SARAH D. MORRISON
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED.**

### I.    BACKGROUND

Petitioner challenges his convictions after a jury trial in the Franklin County Court of Common Pleas on felonious assault and assault. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} On January 18, 2017 plaintiff-appellee, State of Ohio, indicted appellant on one count of felonious assault, in violation of R.C. 2903.11, one count of assault, in violation of R.C. 2903.13, and one count of aggravated menacing, in violation of R.C. 2903.21. The state moved to dismiss the aggravated menacing charge at trial.
>
> {¶ 3} The events giving rise to the indictment occurred December 11, 2016 at Zuey's Roundback Bar ("Zuey's") in Columbus, Ohio. Sara Evans, the bartender at Zuey's, explained that shortly after her shift began that evening, she "noticed somebody trying to steal from the dart case." (Tr. Vol. I at 62.) Zuey's had a case containing dart equipment which patrons could purchase located on a small stage near a row of dart boards. Evans recognized the individual she saw stealing from the dart case as Tyler Loomis. Evans was familiar with Tyler because, on a previous

occasion, he began using the darts from the case and Evans had "warned him that he has to pay for them." (Tr. Vol. I at 66.) Evans asked her boyfriend who was present in the bar, Matthew Decker, to go ask Tyler to leave. Decker went to speak to Tyler.

{¶ 4} When Evans looked over at the two men it appeared "Tyler was taking offense and was more aggressive, and [Decker] literally put his hands up and was backing off." (Tr. Vol. I at 68.) Evans saw Tyler's friend and Tyler's "family, his dad and the brother," all jump "up and ran to the stage, as if they were all four of them going to jump [Decker]." Evans identified appellant in court, explaining he was "the dad." (Tr. Vol. I at 69, 89.) As Tyler's family and friend approached the stage a "couple of people from the bar jumped up," including bar regular Tracy Konkler. (Tr. Vol. I at 69.)

{¶ 5} As Evans walked out from behind the bar and approached the stage area, Tyler's friend "pulled a knife out, [and] started threatening" Evans and Decker with it. Evans "looked over" and saw "just everyone fighting." Evans stated Konkler was "on the ground getting kicked" by the "brothers, the dad." (Tr. Vol. I at 70.) Evans explained three men were "stomping on [Konkler], they were jumping on him, they were kicking him, very violent." (Tr. Vol. I at 71.)

{¶ 6} Evans saw Decker run "past the guy with the knife to go back to the bar," and saw Tyler run "to go chase him." Evans "got away" at that point and called 911. (Tr. Vol. I at 70.) Evans explained that, eventually, the brother and dad "gave up on beating up [Konkler] and came to help Tyler beat up [Decker]" behind the bar. (Tr. Vol. I at 90.) As Evans was on the phone with 911, the group "finally gave up * * * and left." (Tr. Vol. I at 72.)

{¶ 7} A couple weeks after the incident, officers presented Evans with a photo array. Evans selected appellant's photo from the array because he was "the man [she] saw beating up [Konkler] and trying to attack [Decker]." (Tr. Vol. I at 99.) Reviewing the bar's surveillance video at trial, Evans explained that "the dad" could be seen "hitting [Decker]" behind the bar. (Tr. Vol. III at 370.)

{¶ 8} Decker testified explaining that when he approached a young man standing near the dart case at Zuey's on the evening of December 11, 2016, the young man became aggressive. Decker stated that as Konkler and Evans approached the situation, the "older brother" of the young man and "their dad * * * came up out of nowhere." (Tr. Vol. II at 278.) A "fourth individual" also came up and "pulled out a little box cutter." (Tr. Vol. II at 274.) When the "guy lunge[d] at [Evans] with [the] knife" Decker "kind of took off" and ran behind the bar. Decker saw Konkler on the ground in the "fetal position" as the "dad and the two brothers" were "[b]eating him about the - - everywhere, face, neck, kicking him and stomping on him." (Tr. Vol. II at 278, 284.)

2

{¶ 9} When Decker ran behind the bar "the younger of the two brothers * * * jumped over the bar at [him]." Decker "hit" the young man "a couple of times," but then started to feel "punches in the back of [his] head." (Tr. Vol. II at 280, 293.) Decker explained the "same ones that were beating up [Konkler]" began "attacking [him] behind the bar." (Tr. Vol. II at 280.) Decker stated appellant "and both of his sons were throwing punches at [him]." (Tr. Vol. II at 321.) Decker identified appellant in court as the one "who beat - - was helping beat up [Konkler] along with the other two, [and] the one who attacked [him] behind the bar." Decker was "beat up" as a result of the incident, he "had lumps all over [his] head." (Tr. Vol. II at 294.)

{¶ 10} Konkler was exiting the restroom at Zuey's on the evening of December 11, 2016 when he saw three men surrounding Decker. When Konkler approached the situation one man pushed him "[o]ne of them tried to throw a punch," and Konkler "threw one back." Konkler "got hit" and fell to the ground. Konkler "couldn't say" who hit him as the hit "came from the side." (Tr. Vol. II at 188.) As Konkler was on the ground "at least two to three people" began kicking him. By about "the fourth or fifth kick, [Konkler] knew at least one rib was broke." Konkler "screamed out," noting it was "the most intense pain [he had] ever felt." (Tr. Vol. II at 190, 192.) When the kicking stopped, Konkler "just laid there," he was "bleeding all over the place." (Tr. Vol. II at 193.)

{¶ 11} Kathleen Eller, Konkler's girlfriend, was sitting at the bar waiting for Konkler to return from the restroom when the incident occurred. As Konkler exited the restroom and walked toward "Decker and the two gentlemen," Eller saw an "older gentleman" come up and "clock[ ] [Konkler] knocked him to the ground." (Tr. Vol. I at 121.) Eller stated that the two younger gentleman then ran over and "[a]ll three of them start[ed] kicking" Konkler in "his face, in his stomach, in his back." (Tr. Vol. I at 123.) Eller identified appellant in court as the individual she saw punch and kick Konkler.

{¶ 12} After the melee, paramedics took Konkler to the hospital. Konkler suffered a black eye, three broken ribs, two fractured vertebrae, and a punctured spleen as a result of the incident. Konkler underwent surgery to have his spleen removed and remained in the hospital for ten days.

{¶ 13} On January 9, 2017, Detective Charles Rosch questioned appellant regarding the events of December 11, 2016. Appellant admitted he had gone to Zuey's with his sons that evening and admitted his sons were involved in a fight with other bar patrons that night. Appellant, however, asserted that he did not participate in the fight.

{¶ 14} At the close of the state's case-in-chief, appellant made a Crim.R. 29 motion for acquittal. The trial court denied the motion.

{¶ 15} The jury found appellant guilty of felonious assault with respect to Konkler, and guilty of assault with respect to Decker. The trial court entered a nolle prosequi on the aggravated menacing charge. The court sentenced appellant to a prison term of five years on the felonious assault charge, to run concurrent with a prison term of 180 days on the assault charge. The court ordered that appellant pay restitution in the amount of $7,059.42.

Assignments of Error

{¶ 16} Appellant appeals and assigns the following four assignments of error for our review:

[I.] THE TRIAL COURT ERRED BY OVERRULING THE REQUEST FOR MISTRIAL VIOLATING APPELLANT'S DUE PROCESS RIGHTS AND THE RIGHT TO PRESENT A DEFENSE UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION.

[II.] ASSUMING, ARGUENDO, THERE WAS NOT A MISTRIAL, THE TRIAL COURT ERRED BY NOT STRIKING TESTIMONY VIOLATING APPELLANT'S DUE PROCESS RIGHTS AND RIGHT TO PRESENT A DEFENSE UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION.

[III.] THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY OVERRULING APPELLANT'S CRIM.R. 29 MOTION FOR JUDGMENT OF ACQUITTAL, AS THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGES BEYOND A REASONABLE DOUBT.

[IV.] THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY PROVISIONS OF THE OHIO CONSTITUTION BECAUSE THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*State v. Loomis*, 10th Dist. No. 17AP-843, 2019 WL 264757, at *1-3 (Ohio Ct. App. June 27, 2019).  On June 27, 2019, the appellate court affirmed the trial court's judgment.  On April 28,

2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Loomis*, 158 Ohio St.3d 1487 (Ohio 2020).

On June 22, 2020, Petitioner filed this pro se habeas corpus petition. He asserts that the trial court improperly denied his request for a mistrial or to strike the testimony of Sara Evans, violating his right to present a defense (claims one and two); that the evidence is constitutionally insufficient to sustain his convictions (claim three); and that his convictions are against the manifest weight of the evidence (claim four). It is the Respondent's position that Petitioner's claims lack merit.

## II.     STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state–court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted)).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

5

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained § 2254(d)(1)'s high standards as follows:

>Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798, (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively

6

unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)) ("*Miller–El I*"). The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## II. DISCUSSION

### A. CLAIMS ONE AND TWO

Petitioner asserts that the trial court improperly failed to strike the testimony of prosecution witness Sara Evans or grant his request for a mistrial in view of the delay in his ability to cross-examine Evans, violating his right to defend. The state appellate court rejected these claims on the merits:

> {¶ 17} Appellant's first assignment of error asserts the trial court erred by denying his request for a mistrial. Appellant moved for a mistrial based on the delay which occurred between Evans' direct and cross-examination.
>
> {¶ 18} The state completed its direct examination of Evans on the morning of Tuesday, September 26, 2017. Following Evans' direct examination, the prosecutor informed the court that Evans "had a medical issue come up which made it very uncomfortable for her to sit here in court." (Tr. Vol. I at 101.) The state asked the court to allow it to call other witnesses and conclude with Evans' cross-examination the following day at 1:30 p.m. Defense counsel opposed the state's request. The court agreed to allow Evans' cross-examination to occur the following day, but indicated it would "strike all of her testimony" if Evans did not "show up." (Tr. Vol. I at 103.)
>
> {¶ 19} The court informed the jury that Evans would be "back tomorrow at 1:30 for the cross-examination of the defense." (Tr. Vol. I at 104.) The court instructed the jury they were "not to speculate, guess or infer anything from the procedure which is going on here as to the timing of the witness and the cross-examination." (Tr. Vol. I at 105.) The state proceeded with its case-in-chief.
>
> {¶ 20} Evans did not appear for cross-examination on Wednesday, September 27, 2017. The prosecutor informed the court that he had tried to contact Evans, but her phone went straight to voicemail. Appellant moved for a mistrial, arguing that Evans' absence impaired "not only his ability to confront witnesses, but also the look of the jurors that we are not proceeding with the cross-examination of the

7

witness in due course." (Tr. Vol. II at 264.) Alternatively, appellant asked the court to strike Evans' testimony.

{¶ 21} The court denied the motion for mistrial, and agreed to allow the state to call Evans at 9:00 a.m. the following morning, September 28, 2017. However, the court again indicated it would "strike her testimony completely" if Evans did not appear the following morning. (Tr. Vol. II at 336.)

{¶ 22} Evans appeared for her cross-examination on the morning of September 28, 2017. Defense counsel asked Evans where she had been the previous day, and Evans replied she had been "[a]t home in bed," noting that she "didn't feel good" and "just didn't leave [her] bed." (Tr. Vol. III at 347, 365.) Evans admitted she was under subpoena and agreed with defense counsel that by not appearing in court she had "willfully disobeyed a Court order." (Tr. Vol. III at 348.) The state rested after Evans' cross-examination concluded.

{¶ 23} As the trial court is in the best position to determine whether circumstances warrant a mistrial, a trial court's order granting or denying a request for a mistrial is reviewed for abuse of discretion. *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 13; *State v. Glover,* 35 Ohio St.3d 18, 19 (1988). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 24} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties." *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus.

{¶ 25} Appellant asserts the trial court erred in denying his request for a mistrial as the delay between Evans' direct and cross-examination impaired his right to present a complete defense. Appellant argues he "had the right to confront a key witness against him – Bartender Sara Evans," and that the delay prevented him "from immediately confronting [Evans] and questioning her about her statements to the State." (Appellant's Brief at 17-18.)

{¶ 26} The United States Constitution guarantees criminal defendants "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). The opportunity to present a complete defense "would be an empty one if the State were permitted to exclude competent, reliable evidence * * * when such evidence is central to the defendant's claim of innocence." *Id.*

8

{¶ 27} The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant to confront and cross-examine witnesses testifying against him or her. *State v. Parsons*, 10th Dist. No. 06AP-410, 2007-Ohio-1204, ¶ 16, citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965). "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis sic.) *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Trial courts retain wide latitude to impose reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

{¶ 28} Evid.R. 611(A) provides a trial court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to: (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. R.C. 2945.10 sets forth the order of proceedings in a criminal trial, but specifically provides that "the court, for good reason, in furtherance of justice, may permit evidence to be offered by either side out of its order." R.C. 2945.10(D). Any decision to vary the order of proceedings as established in R.C. 2945.10 is within the sound discretion of the trial court. *State v. Jenkins*, 15 Ohio St.3d 164 (1984), paragraph eleven of the syllabus; *State v. Graven*, 54 Ohio St.2d 114, 115 (1978).

{¶ 29} In *State v. Zander*, 9th Dist. No. 24706, 2010-Ohio-631, the court concluded a ten-day delay between a witness's direct and cross-examination did not impair the defendant's right to confront the witnesses against him. The witness failed to appear for her scheduled cross-examination after she was admitted to the hospital for emergency gallbladder surgery. The court allowed the state to complete its case-in-chief and allowed the defense to present witnesses in defense while the witness's cross-examination remained suspended. Upon her release from the hospital, the witness was re-called and testified on cross-examination. The reviewing court concluded "the trial court had 'good reason' to deviate from the prescribed order for taking evidence at trial and did not abuse its discretion in doing so." *Id*. at ¶ 65, citing R.C. 2945.10(D). *See also State v. Henness*, 79 Ohio St.3d 53, 59-60 (1997) (finding no abuse of discretion in the trial court's decision to deny a motion for a mistrial following a witness's disappearance that resulted in a seven-day delay between the witness's direct and cross-examination); *United States v. Williams*, 375 Fed.Appx. 682, 685 (9th Cir.2010) (observing the trial court did not abuse its discretion "by permitting the government to present the direct testimony of three cooperating witnesses without immediate cross-examination of each witness," as the defendants were able to "fully cross-examine[ ] all three cooperating witnesses" at a later time).

{¶ 30} The state informed the court that Evans had a medical condition which made it uncomfortable for her to remain in court following her direct examination. The trial court exercised its discretion to permit Evans' cross-examination to occur out-of-order, and avoided the needless consumption of time by allowing the state to call

other witnesses until Evans returned for her cross-examination. We find no abuse of discretion by the trial court in this respect.

{¶ 31} Moreover, allowing the out-of-order cross-examination of Evans did not deprive appellant of his right to confront a witness or of his right to present a complete defense. Appellant had the opportunity to cross-examine Evans. Defense counsel questioned Evans regarding her reasons for not appearing in court the previous day and about the statements she made during her direct examination.

{¶ 32} Appellant asserts that Evans' testimony on cross-examination was "confusing, and she struggled to recollect her responses to the State's questions." (Appellant's Brief at 18.) Appellant notes specifically that, although the court sustained the state's objection to a question regarding Evans' identification of the individuals pictured in state's exhibit B-32, "[d]efense counsel's memory of testimony from two days prior was [Evans] referenced a person in a red shirt as Appellant." (Appellant's Brief at 18.)

{¶ 33} On direct examination, Evans explained that immediately after the incident she "went on Facebook on [her] phone and just kind of figured out who was who and showed the cops that." (Tr. Vol. I at 72.) Evans identified state's exhibit B-32 as "the picture off [her] phone of the three that were in the fight." Evans identified the individuals in the photo as Tyler, "the one that had [her] at knifepoint," and "the one that beat up [Konkler]." Evans specifically stated on direct that she "couldn't find a picture of the dad." (Tr. Vol. I at 88.) On cross-examination, defense counsel asked Evans if she recalled "on [Tuesday] when you testified that you pointed out the gentleman in the red shirt" in the photo as being appellant. Evans stated "[n]o, that is not the one I pointed out," explaining that the individual wearing the red shirt was "the brother." (Tr. Vol. III at 363.) Thus, Evans never identified appellant as being one of the individuals in the photo.

{¶ 34} Although appellant claims Evans' testimony was confusing, we fail to perceive how any of the minor inconsistencies in Evans' testimony prejudiced appellant or deprived him of a fair trial. For instance, Evans stated on direct examination that the incident lasted five minutes, but was more equivocal on cross-examination asserting first that she "didn't say five minutes" and then stating that the incident did last "about five minutes. I am not sure. * * * It was very fast." (Tr. Vol. III at 356-57.) Evans also stated on direct examination that Konkler was throwing punches at the start of the fight but on cross-examination Evans stated that Konkler was "more deflective" and "wasn't punching. No, he had no reason to start punching." (Tr. Vol. III at 357-58.) Notably, Evans consistently testified on both direct and cross-examination that she saw appellant kick Konkler and hit Decker.

{¶ 35} Defense counsel used both the inconsistencies in Evans' testimony and her failure to appear in court on Wednesday, September 27th to argue Evans lacked credibility. Defense counsel asserted in closing argument that Evans' decision to

"disobey[ ] a court order" was a "credibility issue," and that Evans' "story changed" as it "went from, oh, [Konkler] punching and swinging in the fight to deflecting, trying to protect himself." (Tr. Vol. III at 403, 405, 406.) The court also instructed the jury they were not to speculate, guess, or infer anything from the timing of the witnesses and cross-examination. A jury is presumed to follow the trial court's cautionary instructions. *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001); *State v. Loza*, 71 Ohio St.3d 61, 75 (1994).

{¶ 36} The record demonstrates appellant was given a full and fair opportunity to explore and expose any infirmities in Evans' testimony through cross-examination. Accordingly, the two-day delay in Evans' cross-examination did not deprive appellant of a fair trial. As such, the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

{¶ 37} Based on the foregoing, appellant's first assignment of error is overruled.

{¶ 38} Appellant's second assignment of error asserts that, if Evans' delayed cross-examination did not result in a mistrial, the trial court erred by not striking Evans' testimony. "[T]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. We review the trial court's decision to admit Evans' testimony under the abuse of discretion standard. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 79.

{¶ 39} The court indicated its willingness to strike Evans' testimony if Evans did not appear for cross-examination. As Evans ultimately appeared for cross-examination, the court did not strike her testimony. Accordingly, the court's refusal to strike Evans' testimony was not unreasonable, arbitrary, or unconscionable. Although appellant argues the delay in Evans' cross-examination caused him prejudice, we rely on Zander, Henness, and Williams after having thoroughly reviewed the record and find no prejudice resulted from the two-day delay between Evans' direct and cross-examination.

{¶ 40} Based on the foregoing, appellant's second assignment of error is overruled.

*State v. Loomis*, 2019 WL 2647557, at *3–7.

Petitioner's challenge to the trial court's evidentiary ruling that permitted a delay in the cross-examination of Evans does not provide him a basis for relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62 (1991); *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. He must show that the evidentiary ruling was "so

11

egregious that it resulted in a denial of fundamental fairness." *Giles*, 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Stated differently, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Giles,* 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)).

For the reasons well said by the state appellate court, the record fails to reflect such circumstances here. Most importantly, the trial court did not deprive Petitioner of his right to present a defense or to cross-examine Evans. Defense counsel vigorously cross-examined her, and then attacked her credibility in closing argument. As such, Petitioner cannot establish prejudice. Moreover, the Supreme Court has never prohibited such an evidentiary procedure. Thus, Petitioner cannot establish a basis for federal habeas corpus relief under 28 U.S.C. § 2254(d). *See Woods v. Donald*, -- U.S. --, --, 135 S.Ct. 1372, 1377 (2015); *Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011) (In deciding whether a state's decision contravened or unreasonably applied federal law, "we look to Supreme Court cases already decided at the time the state court made its decision.") (citing *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)).

Claims one and two are without merit.

### III. CLAIM THREE

Next, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions.

The state appellate court rejected this claim as follows:

> {¶ 49} Appellant was convicted of committing felonious assault and assault. R.C. 2903.11(A)(1) defines the crime of felonious assault, providing that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." R.C. 2903.13(A) defines the crime of assault, providing that "[n]o person shall knowingly cause or attempt to cause physical harm to another." Physical harm "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Serious physical harm includes any "condition of such gravity as would normally require hospitalization" and any physical harm that "involves acute pain of such duration as to result in substantial suffering." R.C. 2901.01(A)(5)(a) and (e).
>
> {¶ 50} Evans and Decker both testified they saw appellant kick and stomp on Konkler. Konkler was unable to identify who attacked him, but testified that someone punched him and two to three people kicked him while he was on the ground. Eller was "100 percent sure" that appellant was the individual she saw punch and kick Konkler. (Tr. Vol. I at 167.) As a result of the incident, Konkler suffered broken bones and had to have his spleen removed; he remained in the hospital for ten days.
>
> {¶ 51} Evans and Decker both testified that appellant hit Decker when Decker was behind the bar. Decker was certain that appellant hit him, explaining "I know [appellant] was punching me. I was there." (Tr. Vol. II at 321.) Decker testified he had lumps all over his head from the fight.
>
> {¶ 52} Accordingly, the evidence demonstrates appellant knowingly caused serious physical harm to Konkler by punching and kicking him, and appellant knowingly caused physical harm to Decker by hitting him.
>
> {¶ 53} Appellant argues the evidence does not support the convictions because the state's witnesses "were inconsistent and intoxicated." (Appellant's Brief at 26.) Eller, Konkler, and Decker all testified they had consumed some alcohol at the bar before the incident occurred. Thus, the jury was aware the witnesses had consumed alcohol and it was within the province of the jury to take the witnesses' alcohol consumption into consideration when weighing the evidence and assessing the witnesses' credibility. *State v. Jackson*, 10th Dist. No. 10AP-693, 2011-Ohio-4362, ¶ 50.
>
> {¶ 54} While the jury may take note of inconsistencies in the evidence and resolve or discount them accordingly, "'such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'" *State v. Strong,* 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 39, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). The testimony of even "one witness, if believed by the jury, is enough to support a conviction." *Id.* at ¶ 42. *See also State v. Antill,* 176 Ohio St. 61, 67 (1964); *State v. Jackson*, 10th Dist. No.

13

>01AP-973 (Mar. 19, 2002). Although the witnesses' testimonies may have contained minor differences, the witnesses were consistent regarding the violent acts they saw appellant commit against Konkler and Decker. The minor inconsistencies in the evidence did not render appellant's convictions against the manifest weight or sufficiency of the evidence.
>
>{¶ 55} After reviewing the entire record, we find nothing to indicate the jury clearly lost its way or that any miscarriage of justice resulted as to require a new trial.
>
>The record reflects substantial, credible evidence from which the trier of fact could have reasonably concluded that all elements of felonious assault and assault were proven beyond a reasonable doubt. Accordingly, appellant's convictions were supported by both sufficient evidence and the manifest weight of the evidence.

*State v. Loomis*, 2019 WL 2647557, at *8-9.

The Fourteenth Amendment's Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson,* 443 U.S. at 324 n.16).

Additionally, when determining if the evidence was sufficient to support a conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson,* 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that

14

the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. at 296–97 (quoting *Jackson,* 443 U.S. at 326).

Further, federal habeas courts apply a "double layer" of deference to state court determinations of the sufficiency of the evidence. Deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a de novo review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle to meet. For the reasons discussed by the state appellate court, Petitioner has failed to do so here. When construing all of the evidence in the light most favorable to the prosecution, the Court agrees that the evidence is constitutionally sufficient to sustain Petitioner's convictions on felonious assault and assault.

## IV. CLAIM FOUR

Petitioner also asserts that his convictions are against the manifest weight of the evidence. This claim does not provide a basis for federal habeas corpus relief. *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 F. App'x 761, 765, n.4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017) (citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio)) ("Whether a conviction is against the manifest weight of the evidence is purely a question

of Ohio law."); *see also Taylor v. Warden, Lebanon Correctional Inst.*, No. 2:16-cv-237, 2017 WL 1163858, at *10–11 (S.D. Ohio March 29, 2017) (same) (citations omitted).

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions are against the manifest weight of the evidence cannot be considered by this Court.

V.     **DISPOSITION**

Accordingly, it is **RECOMMENDED** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.* See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED

Date: March 29, 2021

/s/Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE